UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

MAURICIO ESCALANTE,

     Petitioner,

v.                             Case No. 2:21-cv-934-JLB-KCD

SECRETARY, DEPARTMENT OF
CORRECTIONS, AND ATTORNEY
GENERAL, STATE OF FLORIDA,

     Respondents.

---

## **ORDER**

Mauricio Escalante ("Petitioner"), a prisoner in the custody of the Florida Department of Corrections, petitions this Court for a writ of habeas corpus under 28 U.S.C. § 2254.   (Doc. 1.)   The Secretary of the Florida Department of Corrections ("Respondent") filed a response in opposition to the petition.   (Doc. 8.)   Despite being granted an extension of time to do so (Doc. 13), Petitioner did not file a reply.

After carefully reviewing the pleadings and the entire state-court record, the Court concludes that Petitioner is not entitled to federal habeas corpus relief on any ground raised in this petition.   Further, because the Court was able to resolve each ground on the basis of the record, an evidentiary hearing is not warranted.   See Schriro v. Landrigan, 550 U.S. 465, 474 (2007).

### I.     **Background**

On January 21, 2010, the State of Florida charged Petitioner by information with second degree murder.   (Doc. 8-2 at 24.)   Seven years later, on January 27,

2017, Petitioner entered a negotiated plea to one count of second-degree murder. (Id. at 32–62.)   As contemplated by the plea agreement, the trial court sentenced Petitioner to twenty years' imprisonment.   (Id. at 60, 69–73.)   Florida's Second District Court of Appeal ("Second DCA") affirmed Petitioner's conviction and sentence per curiam without a written opinion.   (Id. at 92); Escalante v. State, 205 So. 3d 598 (Fla. 2d DCA 2016).

Thereafter, Petitioner filed a *pro se* motion and amended motion for postconviction relief under Rule 3.850 of the Florida Rules of Criminal Procedure (collectively, "Rule 3.850 Motion").   (Doc. 8-2 at 364–412, 737–42.)   The postconviction court denied relief (id. at 745–1044), and the Second DCA affirmed per curiam without a written opinion.   (Id. at 1071); Escalante v. State, 304 So.3d 770 (Fla. 2d DCA 2020).

Petitioner timely filed his federal habeas petition on November 18, 2020. (Doc. 1.)[1]

## II.   Legal Standards

### A.   The Antiterrorism Effective Death Penalty Act (AEDPA)

Under the AEDPA, federal habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

---

[1] Under the "mailbox rule," a pleading is considered filed by an inmate on the date it was delivered to prison authorities for mailing, which—absent contrary evidence—is the date it was signed.   Washington v. United States, 243 F.3d 1299, 1301 (11th Cir. 2001).   Here, the petition was stamped as provided to Florida State Prison for mailing on November 18, 2020.   (Doc. 1 at 1.)

     (1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

     (2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)–(2).   In this context, clearly established federal law consists of the governing legal principles, and not the dicta, set forth in the decisions of the United States Supreme Court at the time the state court issued its decision.   White v. Woodall, 572 U.S. 415, 420 (2014); Carey v. Musladin, 549 U.S. 70, 74 (2006) (citing Williams v. Taylor, 529 U.S. 362, 412 (2000)).

A decision is contrary to clearly established federal law if the state court either:   (1) applied a rule that contradicts the governing law set forth by Supreme Court case law; or (2) reached a different result from the Supreme Court when faced with materially indistinguishable facts.   Ward v. Hall, 592 F.3d 1144, 1155 (11th Cir. 2010); Mitchell v. Esparza, 540 U.S. 12, 16 (2003).

A state court decision involves an unreasonable application of the Supreme Court's precedents if the state court correctly identifies the governing legal principle, but applies it to the facts of the petitioner's case in an objectively unreasonable manner, Brown v. Payton, 544 U.S. 133, 134 (2005), or "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply."   Bottoson v. Moore, 234 F.3d 526, 531 (11th Cir. 2000) (quoting Williams, 529 U.S. at 406).

3

The standard to obtain relief under 28 U.S.C. §2254(d) is both mandatory and difficult to meet.   To demonstrate entitlement to federal habeas relief, the petitioner must show that the state court's ruling was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."   White, 572 U.S. at 420 (quoting Harrington v. Richter, 562 U.S. 86, 103 (2011)).   Moreover, when reviewing a claim under section 2254(d), a federal court must presume that any "determination of a factual issue made by a State court" is correct, and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence."   28 U.S.C. § 2254(e).

A state court's summary rejection of a claim, even without explanation, qualifies as an adjudication on the merits—warranting deference.   Ferguson v. Culliver, 527 F.3d 1144, 1146 (11th Cir. 2008).   Generally, in the case of a silent affirmance, a federal habeas court will "look through" the unreasoned opinion and presume that the affirmance rests upon the specific reasons given by the last court to provide a reasoned opinion.   See Ylst v. Nunnemaker, 501 U.S. 797, 806 (1991); Wilson v. Sellers, 138 S. Ct. 1188, 1192 (2018).   However, the presumption that the appellate court relied on the same reasoning as the lower court can be rebutted "by evidence of, for instance, an alternative ground that was argued [by the state] or that is clear in the record" showing an alternative likely basis for the silent affirmance.   Sellers, 138 S. Ct. at 1196.

### B.    Ineffective Assistance of Counsel

In Strickland v. Washington, the Supreme Court established a two-part test

for determining whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance.   466 U.S. 668, 687–88 (1984).   A petitioner must establish that counsel's performance was deficient and fell below an objective standard of reasonableness and that the deficient performance prejudiced the defense.   Id.

The focus of inquiry under Strickland's performance prong is "reasonableness under prevailing professional norms."   Id. at 688.   In reviewing counsel's performance, a court must presume that "counsel's conduct falls within the wide range of reasonable professional assistance."   Id. at 689 (citation omitted).   A court must "judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct," applying a highly deferential level of judicial scrutiny.   Roe v. Flores-Ortega, 528 U.S. 470, 477 (2000) (quoting Strickland, 466 U.S. at 690).

Proving Strickland prejudice "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." 466 U.S. at 687.   "Strickland places the burden on the defendant, not the State, to show a 'reasonable probability' that the result would have been different" had Counsel performed as Petitioner argues he should have.   Wong v. Belmontes, 558 U.S. 15, 27 (2009) (quoting Strickland, 466 U.S. at 694). To show prejudice in the context of a plea, the petitioner   "must show the outcome of the plea process would have been different with competent advice."   Lafler v. Cooper, 566 U.S. 156, 163 (2012); see also Hill v. Lockhart, 474 U.S. 52, 59 (1985) ("The . . . prejudice . . .

requirement . . . focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process") (internal quotation omitted). In <u>Hill</u>, when evaluating the petitioner's claim that ineffective assistance led to the acceptance of an improvident guilty plea, the Court required the petitioner to show "that there is a reasonable probability that, but for counsel's errors, [the defendant] would not have pleaded guilty and would have insisted on going to trial." 474 U.S. at 59.

## III.   Discussion

This case involves the December 19, 2009 stabbing death of Charlie Guzman during a brawl between two groups of young men.   Detective William Still of the Collier County Sheriff's Office summarized the activities surrounding Mr. Guzman's death in his police report:[2]

> Between 0300–0334 hrs, 19 Dec. 09, Mr. Guzman and friends gathered at a common laundry area at 707 Colorado Avenue (farm worker tenant apartments).   Upon arrival at the outdoor laundry room, there were three Hispanic males also at the laundry.   The groups began talking, and during this interaction, a verbal dispute ensued over Mr. Guzman's group speaking English and not Spanish. The verbal altercation turned physical when one of the unidentified Hispanic males and one of Mr. Guzman's friends began fist fighting.
>
> Mr. Escalante was identified by three of Mr. Guzman's friends as being the second of the three Hispanic males at the scene.   Mr. Escalante ran from the laundry area when the fight began to an apartment approximately 100 feet away.   He returned carrying an unidentified weapon (described as about 8 inches in length with a brown or yellow handle).   Mr. Escalante ran towards Mr. Guzman and engaged him in a physical altercation.   Witnesses described Mr. Escalante running up to Mr. Guzman and striking Mr. Guzman in the abdominal area.   Mr.

---

[2] Petitioner disputes the accuracy of portions of the police report.   <u>See</u> Grounds One, Four, <u>supra</u>.

Guzman screamed as if he had been severely injured and then retaliated by striking Mr. Escalante with his fist several times.   The men fell to the ground, and Mr. Guzman landed on top of Mr. Escalante.   The men were then separated and all parties at the scene scattered in opposite directions.

Mr. Guzman walked a short distance from the scene and collapsed. Preliminary examination revealed Mr. Guzman sustained a minimum of three stab wounds[.]   EMS transported Mr. Guzman to NCH (North Naples) where he was pronounced dead.

Patrol Deputies responding to the scene were alerted by a witness that Mr. Escalante had been the attacker who stabbed Mr. Guzman.   Mr. Escalante was located sitting on a doorstep of an unnumbered tenant room at 707 Colorado Avenue.   Mr. Escalante made a spontaneous statement to the deputy [that] he was defending himself.   Mr. Escalante was then advised of his legal rights, which he invoked, and he refused to make any additional statements.

Detective Still presented photograph lineups including Mr. Escalante to three of the witnesses identified as having been present at the scene. All three positively identified Mr. Escalante as the person who had physically attacked Mr. Guzman.   No other person(s) had physical contact with Mr. Guzman during the battery.

Mr. Escalante provided four different names to Detectives before finally being identified via fingerprints at the jail.

No evidence was developed to indicate any other person(s) at the scene carried a weapon other than Mr. Escalante.   A search of the scene failed to recover the weapon used to stab Mr. Guzman.

(Doc. 8-2 at 624–65 (minor alterations made for clarity).)

In this petition, Petitioner raises four claims of ineffective assistance of counsel Shannon L. Brown ("Counsel").   He raised each claim in his Rule 3.850 Motion, and each was denied by the postconviction court with a reasoned opinion and affirmed by the Second DCA without a written opinion.   Therefore, the claims are exhausted, and (unless noted otherwise) the Court will look through the Second

DCA's unreasoned opinion on each claim and presume that the affirmance rested upon the reasons given by the postconviction court.   Sellers, 138 S. Ct. at 1192.

### A.   Ground One

Petitioner asserts that Counsel was ineffective for advising him that he had no viable defenses, which "coerced" him into accepting a 20-year plea for a crime he did not commit.   (Doc. 1 at 5.)   Specifically, he asserts that witness Wesley Dorvil recanted his statement to the police and that the recantation established that Petitioner was the victim, not the perpetrator.   (Id.)   He further asserts that a "false" police report concealed this exculpatory information.   (Id.)   He claims, that "[h]ad counsel investigated and presented the truth, [he] would not have plead guilty, but would have [gone] to trial."   (Id.)

Petitioner raised a similar claim in his Rule 3.850 Motion, but it was rejected by the postconviction court.   The state court identified Strickland as the controlling law on this ground, and determined that Petitioner's claim was "conclusively refuted by the record and otherwise without merit for several reasons."   (Doc. 8-2 at 747.)   The state court explained the reasons for its rejection as follows:

> First, it is conclusively refuted by the record because defense counsel did investigate Dorvil's recantation—at length—when she deposed him.   Defendant admits in his motion, signed under oath, that Defense counsel specifically advised the Defendant about the recantation before he pled.
>
> Second, the bald assertion that Detective Still filed a false report is also conclusively refuted by the record because, once again, defense counsel asked Wesley Dorvil about what Dorvil told Detective Still during his initial statement in this case.   Dorvil testified that, during his initial statement, he did in fact tell Detective Still that he saw the Defendant with a weird looking object in his hand that had a wooden handle that he described as being eight inches long. He also testified

that, after the stabbing, he returned to the scene of the crime and witnessed the Defendant holding a knife with an eight-inch blade. Dorvil also acknowledged that, in his initial statement, he told Detective Still that the Defendant and his companions were trying to jump another individual named Salazar and Charlie Guzman was trying to protect Salazar.   Additionally, defense counsel also investigated this matter when she deposed Prisma Chimal and asked about the murder.   Ms. Chimal testified that she saw the Defendant go into an apartment and then return and charge at Charlie Guzman. Consequently, Detective Still's report was not false; he was merely recounting what the witnesses told him after the murder.

Third, the Defendant's claim that he was 'coerced' into entering his plea is conclusively refuted by the record because at the time of his plea the Defendant was specifically asked whether he was promised anything (not already mentioned on the record), threatened or coerced. In each instance, he answered that he was not.

Fourth, the Defendan''s bald assertion that defense counsel told him he had no viable defenses and that he should accept the State's offer fails to demonstrate deficient performance or resulting prejudice. It fails to demonstrate deficient performance because the Defendant does not explain why this advice was unreasonable under the facts and circumstances of this case.   See Boyers v. State, 104 So. 3d 1230, 1232 (Fla. 2d DCA 2012) ("Mr. Boyers' claim is facially insufficient because he failed to allege a specific deficiency on the part of counsel, such as an assertion that counsel's assessment of the chances of success at trial was unreasonable under the facts and circumstances of the case or that counsel had not investigated or was otherwise unfamiliar with the case.").   This claim fails to demonstrate resulting prejudice because the Defendant fails to plead and show that it would have been reasonable for him to reject the State's twenty-year offer and proceed to trial under the facts and circumstances of this case.   See Yanez v. State, 170 So. 3d 9, 10 (Fla. 2d DCA 2015) (discussing the prejudice standard under Hill v. Lockhardt, 474 U.S. 52, 59 (1985) and stating: "A defendant must establish 'that a decision to reject the plea bargain would have been rational under the circumstances.'") (citing Hernandez v. State, 124 So. 3d 757, 762 (Fla. 2012)).   This is especially problematic where the Defendant admitted to stabbing Charlie Guzman while awaiting trial in the Collier County Jail and told a Sheriff's Deputy (post-Miranda) that he was defending himself in the fight.   Therefore, based on the foregoing, Ground One is conclusively refuted by the record and is denied.

(Id. at 747–49 (slight alterations made for clarity and citations to the record

omitted).)   The Second DCA affirmed without a written opinion.   (Id. at 1070.)

The state court's factual conclusions that: (1) Counsel thoroughly investigated Mr. Dorvil's statement and recantation; (2) the statements in Detective Still's report were not false; and (3) Petitioner stated under oath that he was not threatened or coerced into entering a plea are entitled to a presumption of correctness on habeas review.   See 28 U.S.C. § 2254 (e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").   Petitioner offers no evidence to rebut the postconviction court's factual conclusions, and a review of the record supports the state court's adjudication of this claim.

First, as noted by the postconviction court, Counsel spent a large portion of Wesley Dorvil's deposition eliciting testimony to establish that he (Dorvil) no longer thought Petitioner was necessarily the person who stabbed Mr. Guzman.   (Doc. 8-2 at 485–571).   In the deposition—taken four and half years after Detective Still's report—Mr. Dorvil (who presumably was one of the witnesses mentioned in the report) attested that on the night of the stabbing, two groups of young men were drinking, and at least some were smoking pot.   When the groups began arguing, Mr. Guzman jumped between Petitioner and one of Mr. Dorvil's acquaintances with his fists towards Petitioner.   Petitioner then "defend[ed] himself."   (Id. at 516.)

Mr. Dorvil said that he never saw Petitioner stab Mr. Guzman (although his group believed at the time that Petitioner was the stabber).   (Id. at 526.)   He attested that everybody in Petitioner's group had a knife.   (Id. at 527.)   Notably, Mr. Dorvil admits that he initially provided the police with a different version of events (the version in Detective Still's report).   (Id. at 550–57.)   Seeking clarification as to the extent of the changes in his statement, the state cross-examined Mr. Dorvil at the deposition as follows:

> Q.   When Ms. Brown went over your statement and you found inaccuracies in it, the only inaccuracy was who had a knife?
>
> A.   Yes, sir.
>
> Q.   And as you told Detective Sti1l at the time who was there and where you guys were at, all those details were pretty accurate?
>
> A.   Yes, sir.
>
> Q.   So the only issue you seen today was who had a knife, and did you see a knife being used.   Those were the two big inaccuracies that you seen?
>
> A.   As in when the situation took place, I did not see a knife in [Petitioner's] hand.   Whenever – after, you know, we all ran and got back together and we seen Charlie bleeding –
>
> Q.   Right.
>
> A.   You know, he was down.
>
> Q.   Then you came back?
>
> A.   That's when we ran and we seen they had knives on them.   I don't know if one of them lived in that apartment area and they all went and got knives right away or if they was on the person and they didn't take it out.
>
> Q.   Well, you described an eight inch knife to Detective Sti1l.   Was that the eight inch knife that Mr. Escalante had when he came back?

> A.   Yes.
>
> Q.   So that's when you got that idea that was the knife that was used?
>
> A.   Yeah.

(Id. at 551–52.)   Counsel also deposed witness Prismal Chimal and attempted to dispute or cast doubt upon the statements reported in Detective Still's police report.

(Id. at 572–621.)   Therefore, Petitioner's statement that Counsel did not investigate Mr. Dorvil's alleged recantation or the witnesses' statements to the police is unsupportable, and the state court's conclusion as such was not unreasonable.

Next, Detective William Still reported that witnesses to the altercation between Petitioner and Mr. Guzman told him that Petitioner ran from the scene when the fight between two groups of young men began, returned with an object that appeared to be a knife, ran towards Mr. Guzman, and struck him in the abdominal area.   (Doc. 8-2 at 13.)[3]   And in fact, Wesley Dorvil and Prisma Chimal both attested in their depositions that this is the version they told the detective.

(Id. at 532–38, 587–600.)   Therefore, the postconviction court reasonably concluded that—although Petitioner disagreed with the factual statements made by the witnesses to the stabbing—Detective Still's report was not false in the sense that he altered the witnesses' testimony.   Rather, the report accurately restated what the witnesses told Detective Still.   The state court reasonably concluded that Counsel was not ineffective for failing to further investigate the report because there was nothing to investigate.

---

[3] The report does not identify the witnesses by name.

Finally, this is not a situation where Counsel failed to advise Petitioner of a viable defense.   To the contrary, Petitioner admits that Counsel apprised him of Mr. Dorvil's "recanted" statements, but asserted in his Rule 3.850 Motion that Counsel unreasonably advised him that "[Dorvil's] recanted testimony would not prevail at trial because the State's witnesses ['] testimony outweighed the recanted testimony, and advised defendant that he was better off accepting a plea deal." (Doc. 8-2 at 377.)   But Petitioner has not shown that Counsel's recommendation fell below the "objective standard of reasonableness" set as the bar for performance in Strickland.   466 U.S. at 687–88.   In his deposition testimony, Mr. Dorvil did not say that he saw someone else stab Mr. Guzman or that Petitioner could not have been the stabber; rather, he stated that he did not personally see who stabbed Mr. Guzman.   But, as noted by the postconviction court, Petitioner admitted to Zacarias Herrerra, Jr. (another inmate at the Collier County Jail) that he stabbed Mr. Guzman.   (Id. at 656–704.)   And soon after the stabbing, Petitioner told the police that he acted in self-defense.   (Id. at 719.)   Therefore, although Petitioner disagrees with the state's evidence, it strongly suggests that Petitioner was the stabber.   And even if Mr. Dorvil did not witness the actual stabbing as he initially told the police, Counsel's advice that the state's evidence "outweighed [Dorvil's] recanted testimony" was not so unreasonable that no competent counsel would have advised Petitioner to reject the state's favorable plea offer.   See Provenzano v. Singletary, 148 F.3d 1327, 1332 (11th Cir. 1998) (noting that counsel's conduct is unreasonable only if petitioner shows "that no competent counsel would have made

such a choice").   More to the point, the postconviction court's conclusion that Counsel's advice was not "unreasonable under the facts and circumstances of this case" was, in and of itself, consistent with Strickland.   Petitioner is not entitled to federal habeas corpus relief on Ground One.

### B.    Ground Two

Petitioner asserts that Counsel was ineffective for failing to advise him of a viable defense.   (Doc. 1 at 7.)   The postconviction court denied this ground as insufficiently pleaded:

> Notably, the Defendant never actually pleads and shows what specific viable defense that counsel failed to present to him.   He discusses the recantation of witness Wesley Dorvil but, in doing so, admits that he was aware of Mr. Dorvil's recantation at the time he entered his plea. The Defendant appears to be asserting that he was prejudiced because the State's evidence against him was not overwhelming, and he would have prevailed had he gone to trial.   He concludes, "[h]ad counsel advised defendant of a viable defense, he would not have accepted the plea, but instead, he would have insisted on proceeding to trial because he would have had a viable defense and would have prevailed at trial." This claim is insufficient.   The Defendant fails to identify what viable defense counsel should have advised him upon.

(Doc. 8-2 at 749.)   The Second DCA affirmed without a written opinion.   (Id. at 1070.)   When, as here, a state court denies a claim as insufficiently pleaded, it is a rejection of the claim on the merits that is entitled to deference.   See Pope v. Sec'y for Dep't of Corr., 680 F.3d 1271, 1286 (11th Cir. 2012) ("[A] Florida state court's dismissal of a post-conviction claim for facial insufficiency constitutes—at least for purposes of the procedural default analysis—a ruling 'on the merits' that is not barred from our review.")   Petitioner does not show how the state court's conclusion (that this ground was insufficiently pleaded) was unreasonable, and this Court's

independent review of the record and pleadings uncovers no "viable defense" that Counsel should have brought to light.

Ground Two appears to restate the same arguments as Ground One. Specifically, Petitioner reasserts that Mr. Dorvil's "recanted" statement was a viable defense because "the evidence against him was heavily based on Dorvil's initial statement." (Doc. 1 at 7.)    But, as discussed <u>supra</u>, Counsel <u>did</u> advise Petitioner of the allegedly recanted testimony, but she believed that the state's case against him was, nonetheless, strong.   Therefore, in addition to being insufficiently pleaded, Ground Two is also denied for the same reasons explained in Ground One. Moreover, Petitioner admitted that he entered the plea because he was afraid of receiving a life sentence if he went to trial.   See Bradbury v. Wainwright, 658 F.2d 1083, 1086 (5th Cir. 1981) ("A guilty plea made by one fully aware of the plea's consequences must stand unless induced by threats, misrepresentations, or improper promises.").   At his plea hearing, Petitioner—with full knowledge of Mr. Dorvil's statements—acknowledged that he was giving up his right to have the state prove the case against him. (Doc. 8-2 at 53.)   Petitioner was informed that he faced life in prison if convicted at trial, and he told the trial court that he understood the consequences of a conviction. (Id. at 51–52.)   During the court's colloquy with Petitioner, he (Petitioner) explained his reasons for entering a plea:

> Q.    Has anyone promised you or threatened you with anything we do not know about to get you to enter this plea?
>
> A.    No, just because I know what are the consequences of a trial.
>
> Q.    But no one has forced you into this?

A.    No.

Q.    Are you entering this plea because you believe it's in your best interest to do so?

A.    Well, I have talked about this with the lady—the lawyer—my lawyer and we have come to an agreement, and we know that this is what is more convenient for me because I don't have any kind of support from the family—from my family here.

Q.    So you do believe this is in your best interest, sir?

A.    Yes, in the situation in which I am, yes.

(54–55.)   Petitioner does not now direct the Court to any viable defense that was withheld by Counsel and that would have caused him to reject the plea and "insist[] on going to trial." Hill, 474 U.S. at 59.   Rather, the record before the Court shows that Petitioner, fully aware of the evidence against him and all viable defenses, pleaded guilty because he had no support from his family and was afraid of a life sentence if convicted at trial.   The state court reasonably concluded that Petitioner's allegations of an unspecified "viable defense" were insufficient to establish Counsel's deficient performance or resulting prejudice.   Ground Two is therefore denied.

### C.    Ground Three

Petitioner asserts that Counsel was ineffective for failing to investigate "certain police reports and uncover and present false and tampered with police reports." (Doc. 1 at 8.)   He asserts, without explanation, that an unspecified report was inaccurate and that "had counsel discovered the tampered-with false police report, Petitioner would not have accepted the plea but would have insisted on proceeding to trial." (Id.)   Rule 2(c) of the Rules Governing Habeas Corpus

Cases under Section 2254 requires a petitioner to "specify all the grounds for relief available to the petitioner" and to "state the facts supporting each ground."   28 U.S.C. § 2254 Rule 2(c)(1), (2).   Therefore "[h]abeas corpus petitions must meet heightened pleading requirements[.]"   McFarland v. Scott, 512 U.S. 849, 856 (1994).   The brief conclusory allegations in Ground Three—which do not even identify the police report(s) at issue—do not comply with Rule 2(c)'s pleading standards, and the ground is subject to dismissal for that reason alone.   Id. ("Federal courts are authorized to dismiss summarily any habeas petition that appears legally insufficient on its face."); James v. Borg, 24 F.3d 20, 26 (9th Cir. 1994) ("Conclusory allegations which are not supported by a statement of specific facts do not warrant habeas relief.").

Next, even if this is the same claim as raised in ground three of Petitioner's Rule 3.850 Motion, Petitioner does not explain how the state court's adjudication of the claim entitles him to federal habeas relief.   Notably, the postconviction court found the ground "completely unintelligible."   (Doc. 8-2 at 750.)   The court nevertheless concluded that Petitioner intended to argue that Detective Still's report was false because it included information stating that:   (1) witnesses described Petitioner as running up to Mr. Guzman and striking him in the abdomen; (2) Mr. Guzman screamed as if he had been severely injured and retaliated by striking Petitioner; (3) three eyewitnesses identified Petitioner as the person who attacked Mr. Guzman; and (4) deputies were alerted that Petitioner was

the attacker.   (Doc. 8-2 at 751.)   The postconviction refuted these construed

allegations as follows:

> With respect to the information that witnesses described the
> Defendant running up to victim Guzman and striking him in the
> abdomen, the Defendant asserts that this information is false because
> these witnesses merely told the police that the Defendant was fighting
> Mr. Guzman at the time victim Guzman was murdered by being
> stabbed as opposed to saying he attacked or stabbed Mr. Guzman.   It's
> not clear what statement the Defendant is relying on for this assertion
> because he merely references "Exhibit C" without identifying what
> "Exhibit C" is or attaching Exhibit C to his motion.   In any event, this
> claim is conclusively refuted by the record because Prisma Chimal
> testified that she saw the Defendant run out of his house "and go
> charging towards Charlie Guzman."   Specifically, Prisma Chimal
> testified that she saw the Defendant charging towards Charlie
> Guzman, hit him with an object, Guzman saying an expletive, and
> then something she thought was a knife falling on the ground, at
> which point Guzman started fighting the Defendant.   Consequently,
> Detective Still's report accurately recounted what witnesses reported
> about the murder.
>
> As to the information that Guzman screamed as if he had been injured
> the Defendant baldly asserts "[n]either did any of the witnesses state
> that Mr. Guzman screamed[.]"   He provides no record citation for this
> assertion .   However, Prisma Chimal testified that Charlie Guzman
> yelled "Oh, f*'**" during the altercation with the Defendant and she
> attributed this to Charlie having been stabbed by the Defendant.
> Therefore, Detective Still's report accurately reflects the witness
> testimony about the Defendant's murder of Charlie Guzman.
>
> As to the information that three eyewitnesses identified the Defendant
> as the individual who attacked victim Guzman, the Defendant appears
> to be asserting that the witnesses identified him as fighting with
> victim Guzman at the time he was murdered as opposed to attacking
> victim Guzman.   Once again, it is unclear what information he relies
> upon to make this assertion.   However, Corporal Daniel Tess testified
> during his deposition that "two guys" at the crime scene pointed out
> where the suspect that stabbed Charlie Guzman was located.   This
> identification by these two male eyewitnesses occurred immediately
> before the Defendant was secured.   Additionally, Prisma Chimal
> testified that she identified the attacker by photo lineup immediately
> after the murder.   Consequently, at least three individuals who were
> present at the crime scene identified Defendant as the attacker.

Finally, with respect to the information that deputies on the scene were alerted that the Defendant was the attacker, the Defendant appears to be asserting that this is false because Corporal Pietri testified during her deposition that she assumed that she asked the Defendant his name as a means of identifying him as the same Mauricio Escalante who had been fingered by eyewitnesses as the person who murdered victim Guzman.   However, as stated previously, Corporal Tess was alerted by two males at the scene (one of whom was Wesley Dorvil) as to the location of the suspect who had stabbed Charlie Guzman.   Consequently, Ground Three is conclusively refuted by the record and is denied.

(Doc. 8-2 at 751–72 (slight alterations made for clarity and citations to the record omitted).)   The Second DCA affirmed without a written opinion.   (Id. at 1070.)

Petitioner does not explain how the state courts' adjudication of this claim was contrary to Strickland or based upon an unreasonable determination of the facts.   As explained in Ground One supra, a review of the depositions of Prisma Chimal, Corporal Daniel Tess, and Deputy Sheriff Lydia Pitre-Bergol confirm the statements made in Detective Still's report, and support the state courts' resolution of this claim.   That Petitioner disagrees with the statements made by the witnesses does not render false the reporting of those statements and does not suggest that the report was tampered with.   Counsel had no grounds on which to question the police report, and she was not ineffective for failing to do so.   Therefore, the state courts did not unreasonably reject this claim, and Petitioner is not entitled to federal habeas relief on Ground Three.

## D.    Ground Four

Petitioner asserts that Counsel was ineffective for failing to investigate and present a misidentification defense.   (Doc. 1 at 10.)   Specifically, he claims—again, without a coherent explanation—that another individual was initially arrested for

the murder of Mr. Guzman, but was released after Petitioner's arrest.   (Id.)   When

raised in Petitioner's Rule 3.850 Motion, the postconviction court rejected this claim

as "conclusively refuted by the record."   (Doc. 8-2 at 753.)   The court noted that

Petitioner was not identified as the stabber by name, but by "eyewitnesses who

pointed him out at the crime scene and then by fingerprinting at the jail."   (Id.)

The order explained that, "in addition to the two eyewitnesses at the scene of the

crime, and the fingerprint identification at the jail, at least two witnesses also

identified [Petitioner] as the person who murdered Charlie Guzman by selecting

him in the photo lineups."   (Id. at 754.)   The court pointed out that Petitioner told

Deputy Sheriff Lydia Pitre-Borgollo that he was defending himself and admitted to

another inmate at the Collier County Jail that he stabbed the victim.   (Id.)   The

court found that Counsel's performance was not deficient because a

misidentification defense was meritless.   (Id.)   Finally, the postconviction court

concluded that:

> [E]ven if the Defendant could show deficient performance on this
> matter, his claim would still fail to demonstrate resulting prejudice
> because no rational person would reject a twenty-year plea offer on a
> punishable by life felony in order to present an implausible
> "misidentification" defense to a jury.

(Id. at 754.)   The Second DCA affirmed without a written opinion.   (Id. at 1070.)

Plaintiff does not explain how the state courts' adjudication of this claim was

unreasonable.   Indeed, in light of the evidence showing that Petitioner was

involved in Mr. Guzman's stabbing—particularly his statements to the police and

fellow inmate stating as much—a misidentification defense is unlikely to have been

successful at trial, and Counsel's decision not to suggest such a defense was not "so

objectively unreasonable that no competent attorney would have chosen it."   Dingle v. Sec's, Dep't of Corr., 480 F.3d 1092, 1099 (11th Cir. 2007).   Moreover, given the evidence of Petitioner's involvement in the stabbing, it would have been irrational for him to reject a favorable plea offer and pursue a misidentification defense.   See Padilla v. Kentucky, 559 U.S. 356, 372 (2010 ) ("[T]o obtain relief on this type of claim, a petitioner must convince the court that a decision to reject the plea bargain would have been rational under the circumstances.")   The state courts reasonably concluded that Petitioner did not satisfy either Strickland prong.   Petitioner is not therefore entitled to habeas relief on Ground Four.

## IV.   Conclusion

Based on the foregoing, Petitioner is not entitled to relief on the habeas claims presented here.

Accordingly, it is ordered that:

1.     The 28 U.S.C. § 2254 petition filed by Mauricio Escalante is **DENIED**.

2.     The Clerk is **DIRECTED** to enter judgment in favor of Respondent and against Petitioner, deny any pending motions as moot, terminate any deadlines, and close this case.

## Certificate of Appealability[4]

A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition.   28 U.S.C. § 2253(c)(1).   Rather, a

---

[4]   Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, the "district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."

district court or circuit justice or judge must first issue a certificate of appealability (COA).   "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."   28 U.S.C. § 2253(c)(2).   To make this substantial showing,   a petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Slack v. McDaniel, 529 U.S. 473, 484 (2000), or that "the issues presented are adequate to deserve encouragement to proceed further." Miller-El v. Cockrell, 537 U.S. 322, 336 (2003).

Upon consideration of the record, the Court declines to issue a COA. Because Petitioner is not entitled to a COA, he is not entitled to appeal in forma pauperis.

**DONE AND ORDERED** in Fort Myers, Florida on November 21, 2023..

JOHN L. BADALAMENTI
UNITED STATES DISTRICT JUDGE

SA:   FTMP-2

Copies to:   Mauricio Escalante, Counsel of Record